UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SARAH S.,

                Plaintiff,

        v.                                    **DECISION AND ORDER**
                                                      20-CV-6458S

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

        1.        Plaintiff Sarah S.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for supplemental security income under Title XVI of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        Plaintiff filed her application for benefits on November 7, 2016. (R.[2] at 55.) Plaintiff alleged disability beginning on the application date due lead poisoning, mental illness, and a learning disability. (R. at 56.) Plaintiff's application was denied. Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). ALJ JuanCarlos Hunt held a hearing on December 6, 2018, at which Plaintiff appeared and testified pro se. (R. at 26-54.) Vocational Expert Alissa Smith also appeared and testified

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by her first name and last initial.

[2] Citations to the underlying administrative record are designated as "R."

by telephone. At the time of the hearing, Plaintiff was 29 years old, with an eleventh-grade education and no prior work experience. (R. at 35.)

3. The ALJ considered the case de novo and, on February 28, 2019, issued a written decision denying Plaintiff's application for benefits. (R. at 12-21.) On May 4, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 2.) Plaintiff then filed the current action on July 2, 2020, challenging the Commissioner's final decision.[3]

4. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 11, 13.)  Plaintiff filed a response on August 12, 2021 (Docket No. 14), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Defendant's motion is granted, and Plaintiff's motion is denied.

5. A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the

---

[3] The ALJ's February 28, 20219, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

2

Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or

3

> mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity since her application date of November 7, 2016. (R. at 14.) At step two, the ALJ found that Plaintiff has the following severe impairments: history of learning disability,

4

history of mild intellectual disability due to plumbism, and borderline intellectual functioning. (Id.)

11. The ALJ then found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the impairments in 20.C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (Id.)

12. Next, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following exertional limitations:

> she needs to avoid work environments with crowds, extreme temperatures, wetness, humidity, vibrations, fumes, dust, odors, gases, poor ventilation, and other pulmonary irritants, and hazards, such as unprotected heights, machines with moving mechanical parts, and operating employer vehicles; she can understand, remember, and carry out simple instructions; she frequently can interact with supervisors, coworkers, and the public; she can make simple work related decisions; she can tolerate few changes in a routine work setting; and she will be off task five percent of the workday due to attention and concentration lapses.

(R. at 17.)

13. At step four, the ALJ found that Plaintiff has no past relevant work. (R. at 20.) At step five, the ALJ found that there is a significant number of jobs in the national economy that Plaintiff can perform. (Id.) Accordingly, the ALJ found that Plaintiff has not been disabled since her application date of November 7, 2016. (R. at 21.)

14. Plaintiff argues that the ALJ's final determination is not supported by substantial evidence because the ALJ failed to assign controlling weight to, or rely on, any medical opinion and instead relied on his own "lay interpretation" of raw medical data

5

in formulating Plaintiff's RFC. Plaintiff also argues that the ALJ erred in failing to develop the record and in finding that Plaintiff would be off-task five percent of the time. Defendant argues that the ALJ's decision is supported by substantial evidence. For the following reasons, Defendant's argument is convincing.

15. Plaintiff first argues that the ALJ wrongly failed to assign controlling weight to any medical opinion—or to rely on opinion evidence at all—in formulating her RFC.

16. An ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." 20 C.F.R. § 416.927(d)(2) ("Although [the Commissioner] consider[s] opinions from medical sources on issues such as ... [the claimant's] residual functional capacity ..., the final responsibility for deciding these issues is reserved to the Commissioner.").

17. When determining a plaintiff's RFC, an ALJ must evaluate every medical opinion received, "[r]egardless of its source." 20 C.F.R. § 404.1527(c). That evaluation requires the ALJ to resolve "[g]enuine conflicts" among the sources. Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008). "It is well-settled that 'the medical opinion of a [plaintiff's] treating [source] is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence.'" Hatcher v. Astrue, 802 F.Supp.2d 472, 476 (W.D.N.Y. 2011) (quoting Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000)) (alteration added).

18. An ALJ should also consider "information from 'other sources,' … which 'may also help ... to understand how [the claimant's] impairment affects [her] ability to work.'" Allen v. Comm'r of Soc. Sec., 351 F. Supp. 3d 327, 335–36 (W.D.N.Y. 2018). The amount of weight to give the opinions of "other sources" is based in part on "the examining

6

and treatment relationship, length and frequency of the examinations, the extent of relevant evidence given to support the opinion, and consistency with the record as a whole." Williams v. Colvin, No. 15-CV-6119-FPG, 2016 WL 1466562, at *4 (W.D.N.Y. Apr. 14, 2016).

19.     Ultimately, the ALJ is tasked with assigning an RFC that reflects the record as a whole. Johnson v. Colvin, 669 F. App'x 44, 46–47 (2d Cir. 2016). Remand is not warranted when the record contains sufficient other evidence supporting the ALJ's determination and where the ALJ weighs all of that evidence when making his residual functional capacity finding. Tankisi v. Comm'r of Soc. Sec., 521 Fed. App'x. 29, 34 (2d Cir. 2013) (refusing to remand "solely on the ground that the ALJ failed to request medical opinions in assessing residual functional capacity"); Matta v. Astrue, 508 Fed. App'x. 53, 56 (2d Cir. 2013) (concluding that an ALJ did not impermissibly rely on his own medical judgment because "he was entitled to weigh all of the evidence available to make [a residual functional capacity] finding that was consistent with the record as a whole").

20.     Here, Plaintiff submitted a sparse medical record. Apart from prenatal visits, the record shows that she underwent a mental status examination by Dr. Yu-Ying Lin, a consultative psychologist, on January 26, 2017. Dr. Lin opined that Plaintiff had no limitations in following and understanding simple directions, performing simple tasks, maintaining a regular schedule, or relating adequately with others. (R. at 301.)  Dr. Lin opined that Plaintiff had mild limitations in learning new tasks, making appropriate decisions, maintaining attention and concentration, and dealing with stress. (Id.) Plaintiff reported that she had a range of activities of daily living including showering, dressing, and grooming herself, cooking, cleaning, doing laundry, shopping, and taking care of her

four children. (Id.) Dr. Lin assessed Plaintiff with below average to borderline intellectual functioning. (Id.)

21. The record also contains medical opinions predating Plaintiff's application. On February 26, 2008, consultative psychologist Christine Ransom opined that Plaintiff could follow, understand, and carry out simple instructions; maintain attention, maintain a regular schedule, and learn simple tasks. (R. at 199.) She opined that Plaintiff would have mild-to-moderate difficulty in dealing with stress. She found that Plaintiff was cooperative, speech and language skills were within the borderline range, (R. at 198.) Plaintiff received a full-scale IQ score of 65. (R. at 198.)

22. Dr. Jeffrey Santa Maria conducted a neuropsychological evaluation on January 26, 2012. (R. at 217.) Plaintiff received a full-scale IQ score of 61, which Dr. Santa Maria stated was consistent with mild mental retardation. (Id.) Dr. Santa Maria opined that Plaintiff lacked the "cognitive capacity to sustain any sort of competitive employment." (Id.)

23. The ALJ did not give substantial weight to any of these opinions. Regarding Dr. Lin's opinion, the ALJ found that the record reflected more limitations than Dr. Lin found due to Plaintiff's low IQ scores. The ALJ found, on the other hand, that Dr. Santa Maria's opinion stating that Plaintiff was unable to work was an issue reserved to the Commissioner, and that his opinion was inconsistent with Plaintiff's capability for a broad range of daily activities and the only mild attention and concentration limitations that Dr. Lin observed during consultative examination. (R. at 19.) After considering all these opinions, the ALJ assigned Plaintiff an RFC of a wide range of unskilled work, with only frequent interaction with supervisors, coworkers, and the public. (R. at 17.)

24. This Court finds no error in the ALJ's formulation of Plaintiff's RFC. The ALJ was not obliged to rely on any one medical opinion, nor was his RFC invalid because he did not adopt one medical opinion wholesale. The ALJ is obligated, in fact, to consider all the evidence and formulate an RFC that is consistent with the record as a whole. The record here contains somewhat contradictory evidence. On the one hand, Plaintiff consistently had low IQ test scores and was assessed by providers as having either deficient or borderline intellectual functioning. On the other hand, other evidence, including Plaintiff's answers to a questionnaire about her activities of daily living and her own testimony, shows that Plaintiff was able to perform everyday tasks and interact with others. As stated, it is the ALJ's job to reconcile conflicting evidence, and this Court must affirm if the ALJ's conclusions are supported by substantial evidence, a very deferential standard.

25. This Court finds that the ALJ properly considered all the evidence in formulating Plaintiff's RFC, balancing Plaintiff's low IQ scores against evidence that Plaintiff could follow written and spoken instructions and had no difficulty getting along with authority figures. (R. at 142-43.) This Court finds that the ALJ was justified in resolving these facts in the record and they constitute substantial evidence in support of his RFC determination.

26. Plaintiff also argues that the ALJ's finding that she would be off-task five percent of the time due to attention and concentration lapses is not supported by substantial evidence, because her attention was more limited than the ALJ found. But it is Plaintiff's burden to show that she would be off-task more than the five percent assessed by the ALJ. Smith v. Berryhill, 740 F. App'x 721, 726 (2d Cir. 2018) ("Smith had

a duty to prove a more restrictive RFC, and failed to do so."). See also 42 U.S.C. § 423(d)(5); Barry v. Colvin, 606 F. App'x 621, 622 (2d Cir. 2015) (summary order) ("A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits."). Plaintiff agrees that the record demonstrates difficulties with attention and concentration, but appears to argue that the mere fact of assigning a percentage of time off task is erroneous per se. (Docket No. 11-1 at p. 15.) To the contrary, this Court finds that the ALJ's five-percent off-task assessment is supported by substantial evidence, given Dr. Lin's assessment that Plaintiff would have mild limitations in maintaining attention and concentration. And Plaintiff does not point to any evidence that would support a higher off-task assessment. Plaintiff's argument is unavailing.

27.   Plaintiff also argues the ALJ had an enhanced duty to develop the record due to her intellectual disability and her *pro se* status. It is true that the ALJ must obtain a complete medical history for at least the 12 months preceding the month in which a claimant files an application. 20 C.F.R. § 416.912 (b). But it is the claimant's burden to "furnish such medical and other evidence of disability as the Secretary may require." Long v. Bowen, 1989 WL 83379, *4 (E.D.N.Y. July 17, 1989). Here, the record shows that the administration requested records from Monroe Community Hospital and DeGraff Memorial Hospital but was told Plaintiff had not been a patient there. (R. at 290, 293.) At a prenatal visit on October 4, 2016, Plaintiff told the provider that she had no primary care physician. (R. at 246.) On her Disability Report, dated November 28, 2016, Plaintiff reported that she had not received any medical treatment in a long time and did not

currently have a doctor. (R. at 156-58.) On her appeal report, dated May 20, 2017, Plaintiff reported that she had not received any medical treatment since she last reported her medical conditions. (R. at 169-175.) It is not clear, therefore, what records Plaintiff is arguing the ALJ should have obtained to supplement the record he had before him.

28. In any event, the ALJ had sufficient evidence before him to formulate Plaintiff's RFC. He obtained assessments from a consultative physician, a consultative psychologist, and a state agency psychological consultant. The first two performed in-person assessments of Plaintiff and provided opinions regarding her functioning. (R at 61-66.) The opinion of a consultative psychologist can constitute substantial evidence supporting an ALJ's decision. See, e.g., Petrie v. Astrue, 412 F. App'x 401, 406 (2d Cir. 2011) (holding that ALJ did not err in giving substantial weight to consultative psychologists' findings). Similarly, an agency consultative psychologist's opinion is evidence an ALJ must consider because "Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 416.913a (b)(1). This Court finds that the ALJ's development of the record was proper because he attempted to locate other medical records for Plaintiff, ordered consultative evaluations, and considered the evidence as required by the regulations.

29. Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error in the ALJ's determination. The decision contains an adequate discussion of the medical evidence supporting the ALJ's determination that Plaintiff was not disabled, and Plaintiff's aforementioned contentions are unavailing. Plaintiff's Motion

for Judgment on the Pleadings is therefore denied, and Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 13) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:	January 4, 2022
	Buffalo, New York

s/William M. Skretny
WIILLIAM M. SKRETNY
United States District Judge